TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2450
    Facsimile: (213) 894-0140
    E-mail:   solomon.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-00596-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S *MOTION IN LIMINE* TO PRECLUDE IRRELEVANT AND PREJUDICIAL POST-ASSAULT EVIDENCE |
| v. | |
| LUIS DALHET HIPOLITO, | Hearing Date: February 9, 2026 |
| Defendant. | Hearing Time: 11:00 a.m.<br>Location:   Courtroom of the Hon. Stephen Wilson |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Solomon Kim, hereby files this motion in limine to preclude defendant from presenting irrelevant and unduly prejudicial post-assault evidence at trial.

//

//

//

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.[1]

Dated: February 2, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

         /s/
SOLOMON KIM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] The government met and conferred with defense counsel via email, and defense counsel indicated that it was uncertain whether it would stipulate to or oppose this motion.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In June 2025, defendant Luis Hipolito punched a federal officer while he was engaged in an immigration operation in Downtown Los Angeles.  The government charged defendant with assault on a federal officer, Officer C.C., in violation of 18 U.S.C. § 111(a)(1).

The government anticipates that defendant may seek to introduce evidence or argument relating to the takedown and arrest that occurred after the assault, such as the officers' use of force to restrain defendant or defendant's physical appearance afterward.  Any attempt by defendant to introduce evidence or argument relating to this post-assault arrest--including footage, stills, testimony, or commentary concerning the arrest, restraint techniques, or his physical appearance or alleged injuries afterward--should be excluded under Federal Rules of Evidence 401 and 403.

First, the post-arrest evidence bears no relevance to the elements of the charged offense.  The arrest occurred after the charged assault had ended.  Any conduct that occurred after the arrest cannot be probative on any relevant matter at trial.

Second, even if the Court were to find this evidence had any relevance--which it does not--it should be excluded under Rule 403.  Immigration enforcement is presently a highly politicized affair.  Indeed, defendant's assault of C.C. occurred during an immigration enforcement operation.  Admission of evidence regarding the nature or physicality related to defendant's arrest risks producing a decision based not on the law and the evidence presented at trial, but rather on unfair prejudice that would simply lead a jury to confuse the relevant issues, waste time, and risk being misled.  It would also

waste time.  These are precisely the types of dangers that Rule 403 should prevent.  This Court should therefore exclude this evidence.

**II.  STATEMENT OF FACTS**

On June 24, 2025, during an immigration enforcement operation in Downtown Los Angeles, officers from U.S. Immigration and Customs Enforcement ("ICE"), accompanied by agents from the Federal Bureau of Investigation ("FBI"), pulled their car to the side of the road to speak with an individual.  When officers approached, the individuals fled.  As one ICE officer, C.G., tried to pursue one of the fleeing subjects, a bystander, Andrea Velez, stepped into his path, made physical contact with him, and prevented him from continuing the pursuit.  As a result, officers C.G. and C.C. tried to arrest Velez.[1]

While officers were attempting to arrest Velez, defendant stopped his vehicle in the middle of the road, blocking a law enforcement vehicle from leaving.  Defendant and his sister exited the car and began filming the officers.  Defendant attempted to pull Velez away from the officers, and officers pushed defendant back and repeatedly directed him to step away.  Defendant refused to comply and continued filming along with his sister.

Defendant then approached one of the officers and began aggressively yelling, demanding that the officer identify himself. Defendant shouted: "shut the fuck up" and "you're not going to fucking tell me nothing."  Defendant admitted to "blocking" the officers and stated that he was calling 911.  After officers placed Velez in their vehicle and attempted to leave, defendant, along with

---

[1] Velez was later charged by criminal complaint, but those charges were dismissed on the government's motion.  See 25-MJ-03896.

2

several others, stood in front of the lead law enforcement vehicle, blocking its path.[2]

Officer C.C. got out of his car to clear the path.  He repeatedly instructed defendant to move, but defendant refused. Defendant continued yelling profanities and walked back closer to C.C.  C.C. warned defendant multiple times that he would deploy pepper spray if defendant did not step back.  When defendant still refused to comply, C.C. deployed pepper spray.

Immediately after being sprayed, defendant closed the distance between himself and officer C.C. and struck C.C. in the face with a closed fist, breaking his glasses and causing a facial contusion.

Upon witnessing the assault, several officers moved to arrest defendant.  As officers attempted to take defendant into custody, defendant resisted and had to be forced to the ground. Officers struggled to secure defendant's arms to apply handcuffs while defendant continued to resist their efforts.

At the same time, multiple bystanders--both on foot and in vehicles--converged around the officers.  Individuals gathered within close proximity, shouting, filming, and yelling expletives at the officers.  The scene became increasingly chaotic, with officers attempting to maintain control of defendant while also managing the growing crowd and ensuring officer safety.  After several minutes, officers were able to secure defendant in handcuffs and leave the area.

---

[2] After being placed in the car, Velez at one point managed to escape and run away.  However, LAPD, who had arrived at the scene by that point, caught her and returned her to ICE officers.

**III. ARGUMENT**

    **A.   Evidence of the Takedown and Arrest Is Irrelevant**

    Any attempt by defendant to introduce evidence of his arrest should be precluded under Rules 401 and 403.  The assault charged under § 111(a)(1) was complete when defendant struck officer C.C. with a closed fist.  Evidence of the officers' subsequent efforts to restrain and arrest defendant has no tendency to make any element of the offense (i.e., (1) forcible assault, (2) upon a federal officer, (3) engaged in the performance of official duties) more or less probable.  See Fed. R. Evid. 401; Model Crim. Jury Instr. 9th Cir. 8.1 (2022).

    Because the takedown occurred after the assault was over, it is not relevant to defendant's intent, state of mind, or any claim of self-defense.  The self-defense instructions applicable in this case explicitly refers to the officer's "use of unlawful force" immediately preceding, not following, defendant's use of force in defending himself.  See Model Crim. Jury Instr. 9th Cir. 5.10 and 8.3. (2022).  Here, the alleged force used by officers to arrest defendant occurred after defendant initiated and completed the assault on officer C.C. and thus cannot form the basis of any self-defense theory.

    **B.   Even if Minimally Relevant, the Evidence Should Be Excluded**

    Even assuming some minimal relevance, the probative value of post-assault footage or testimony is substantially outweighed by the danger of unfair prejudice, jury confusion, and undue delay.  See Fed. R. Evid. 403.  Such evidence would invite the jury to shift its focus from defendant's conduct to the officers' actions following

such conduct, transforming the trial into a referendum on the propriety of the arrest rather than the charged assault.

As the Ninth Circuit has explained, evidence is unfairly prejudicial when it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action." United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995). Introducing evidence of officers' use of force during the arrest would do precisely that: provoking emotional reactions while providing no insight into whether defendant committed the charged assault.

Moreover, introduction of such evidence risks confusing the issues and creating a collateral "mini-trial" as to whether the arrest was proper. As the jurors will likely be instructed, they are "to weigh and to evaluate all the evidence received in the case" and not "be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases." Model Crim. Jury Instr. 9th Cir. 1.1 (2022). The introduction of the evidence at issue risks unfair prejudice against the government and invites the jury to make its own independent determination about the reasonableness of the arrest--which occurred after the charged conduct--that will likely be based on their perception of law enforcement rather than legal precedent.

Given the limited probative value of evidence of the arrest, the only purpose of introducing such evidence would be to confuse the jury about the elements of the offense, inflame the passions of the jury, or otherwise invite jury nullification by suggesting that the officers acted overzealously or inappropriately. Defendant is not entitled to introduce this otherwise irrelevant evidence in the hopes

of encouraging jury nullification.  This Court should prevent such a sideshow by excluding evidence of the takedown arrest, which occurred only after defendant's criminal conduct was complete.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant its motion in limine and exclude any evidence, testimony, or argument relating to defendant's arrest, including but not limited to footage or references depicting defendant's takedown arrest or any purported injuries he sustained thereafter.