TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JASON C. PANG (Cal. Bar No. 296043)
JOHNPAUL LECEDRE (Cal. Bar No. 303100)
Assistant United States Attorney
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2652 / 4447
    Facsimile: (213) 894-0142
    E-mail:  jason.pang@usdoj.gov
             johnpaul.lecedre@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>LUIS DALHET HIPOLITO,<br><br>        Defendant. | CR No. 2:25-00596-SVW<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  March 31, 2026<br>Time:       9:00 a.m.<br>Location:   Courtroom of the<br>             Hon. Stephen V.<br>             Wilson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorneys Jason C. Pang and JohnPaul LeCedre, hereby files its Trial Memorandum.

//

//

i

The Government respectfully requests leave of the Court to supplement or modify this memorandum as may be appropriate.


Dated: March 27, 2026    Respectfully submitted,

           TODD BLANCHE
           Deputy Attorney General

           BILAL A. ESSAYLI
           First Assistant United States
             Attorney

           ALEXANDER B. SCHWAB
           Assistant United States Attorney
           Acting Chief, Criminal Division


            /s/ *JohnPaul LeCedre*
           JASON C. PANG
           JOHNPAUL LECEDRE
           Assistant United States Attorneys

           Attorneys for Plaintiff
           UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.    INTRODUCTION................................................................1

II.   STATEMENT OF FACTS.........................................................1

III.  STATUS OF THE CASE.........................................................3

      A.    Trial Schedule.......................................................3

      B.    Witnesses & Exhibits.................................................4

      C.    Discovery............................................................4

      D.    Pretrial Motions.....................................................4

      E.    Motions In Limine....................................................5

IV.   CHARGED STATUES AND ELEMENTS...............................................5

      A.    Elements of the Offense..............................................6

      B.    Mens Rea.............................................................6

V.    PENALTIES..................................................................7

VI.   LEGAL AND EVIDENTIARY ISSUES...............................................7

      A.    Video Evidence.......................................................7

      B.    Statements by Defendant..............................................7

      C.    Recordings Must be Played in Open Court..............................8

      D.    Lay Testimony (Evidence of Bodily Injury)............................8

      E.    Photographs..........................................................8

      F.    Duplicates...........................................................9

      G.    Cross-Examination of Defendant.......................................9

      H.    Agent at Counsel Table..............................................10

      I.    Jury Consideration of Potential Sentence............................10

      J.    Objections in the Presence of the Jury..............................11

      K.    Affirmative Defense.................................................11

VII.  CONCLUSION................................................................11

**TABLE OF AUTHORITIES**

**CASES**

Brady v. Maryland, 373 U.S. 83 (1963)................................4

Giglio v. United States, 405 U.S. 150 (1972).......................4

Ohler v. United States, 529 U.S. 753 (2000).........................9

Shannon v. United States, 512 U.S. 573 (1994)......................10

United States v. Young, 470 U.S. 1 (1985)..........................10

United States v. Cuozzo, 962 F.2d 945 (9th Cir. 1992)..............10

United States v. Jim, 865 F.2d 211 (9th Cir. 1989).................6

United States v. May, 622 F.2d 1000 (9th Cir. 1980)................9

United States v. Miranda-Uriarte, 649 F.2d 1345 (9th Cir. 1981).....9

United States v. Noushfar, 78 F.3d 1442 (9th Cir. 1996).............8

United States v. Oaxaca, 569 F.2d 518 (9th Cir. 1978)..............9

United States v. Sanchez, 914 F.2d 1355 (9th Cir. 1990)............6

United States v. Smith, 893 F.2d 1573 (9th Cir. 1990)..............9

United States v. Span, 970 F.2d 573 (9th Cir. 1992)...............11

United States v. Stearns, 550 F.2d 1167 (9th Cir. 1977)............9

United States v. Urena, 659 F.3d 903 (9th Cir. 2011)..............11

**STATUTES**

18 U.S.C. § 111...............................................passim

18 U.S.C. § 3500..................................................4

**RULES**

Fed. R. Evid. 403.................................................7

Fed. R. Evid. 615................................................10

Fed. R. Evid. 701.................................................8

Fed. R. Evid. 801.................................................7

Fed. R. Evid. 901.................................................7

Fed. R. Evid. 1003...............................................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Luis Dalhet Hipolito (hereinafter, "Defendant") is proceeding to trial on a felony count for Assault on a Federal Officer Resulting in Bodily Injury, as indicted by the Grand Jury in this matter on July 15, 2025. (Dkt. 32.)

**II.    STATEMENT OF FACTS[1]**

The government provided a cited and annotated statement of facts in its Motions in Limine. (See, e.g., Dkt. 40.) It is substantially recounted here with some additions.

On June 24, 2025, during an immigration enforcement operation in Downtown Los Angeles, officers from U.S. Immigration and Customs Enforcement ("ICE"), accompanied by agents from the Federal Bureau of Investigation ("FBI"), pulled their car to the side of the road to contact an individual in a consensual encounter. When officers approached, several unknown civilians fled. One of the ICE officers present, C.G., began to pursue one of the fleeing subjects when a bystander, Andrea Velez, stepped into his path, made physical contact with him, and prevented him from continuing the pursuit. As a result, C.G., and his ICE supervisor, C.C., moved to detain and arrest Velez.[2]

While officers were attempting to arrest Velez, Defendant stopped his vehicle in the middle of the busy downtown road, blocking

---

[1] This reflects the anticipated evidence, not all of which will be presented at trial for the reasons set forth within this memorandum. The Government reserves the right to revise the factual summary in advance of trial.

[2] Velez was later charged by criminal complaint, but those charges were dismissed on the government's motion. See 25-MJ-03896.

1

a law enforcement vehicle from leaving. Defendant and his sister exited their vehicle and began berating the officers while filming. Defendant attempted to pull Velez away from the officers, and officers pushed Defendant back, instructing him to step away. Defendant repeatedly refused to comply and continued filming along with his sister.

Defendant then again approached one of the officers and began aggressively yelling, shouting: "shut the fuck up" and "you're not going to fucking tell me nothing." Defendant continually approached the officers in an aggressive stance, admitting them that he was "blocking" the officers and stating that he was going to "call 911" on the officers. After officers placed Velez in their vehicle and attempted to leave, Defendant, along with several others, stood in front of the lead law enforcement vehicle, blocking its path.[3]

Officer C.C. then exited his vehicle to clear the path for the law enforcement convoy. He repeatedly directed Defendant to move, but Defendant continued to refuse while yelling profanities, approaching C.C. in an aggressive stance. C.C. warned defendant multiple times that he would deploy pepper spray if Defendant did not voluntarily step back. When defendant continued to refuse to comply and approached C.C. again, C.C. deployed the pepper spray at close range towards Defendant's face.

After initially stepping back, Defendant then closed the distance between himself and C.C., striking C.C. with a closed fist

---

[3] After being placed in the car, Velez at one point managed to escape and run away. However, LAPD, who had arrived at the scene by that point, caught her and returned her to the ICE officers.

2

to the left side of his face. This resulted in C.C's eye-glasses breaking and a contusion on C.C.

Upon witnessing the assault, several officers moved to arrest Defendant. As officers attempted to take Defendant into custody, Defendant physically resisted and had to be forced on the ground. Officers struggled to secure Defendant's arms to apply handcuffs as Defendant continued to resist their efforts.

At the same time, multiple bystanders—both on foot and in vehicles—converged on the officers. Individuals gathered within close proximity, shouting, filming, and yelling expletives at the officers. The scene became increasingly chaotic, with officers attempting to maintain control of Defendant while also managing the growing crowd to ensure officer safety. After several minutes, officers were able to secure Defendant in handcuffs and leave the area.

**III. STATUS OF THE CASE**

**A.    Trial Schedule**

Trial Date: Trial by jury has not been waived. Jury trial is set to begin on March 31, 2026.

Estimated Time: The estimated time for the presentation of the Government's case-in-chief is one day or less, exclusive of the time needed for jury selection. Defendant has not indicated whether he will testify, nor has he filed a witness list; however, defense counsel has indicated that there may be a defense case during various meet-and-confer discussions.

Defendant: Defendant was released on bond pending trial. (Dkt. 31.) There are no other related open cases in this matter.

**B.    Witnesses & Exhibits**

The Government has filed its Witness List, (Dkt. 58), and expects to call the following two witnesses during its case-in-chief:

- C.C., ICE Officer (victim); and
- C.G., ICE Officer
- J.D., Homeland Security Investigations ("HSI") Agent
- C.M., HSI Agent
- T.F., ICE Officer

The Government reserves the right to call additional witnesses in rebuttal, depending on whether Defendant calls any witnesses, and on the testimony any such witnesses give.

The Government has also filed an Exhibit List, (Dkt. 59), as well as an Amended Exhibit List, (Dkt. 62). The government will seek to admit several exhibits, which may include body camera video excerpts, other video excerpts, photo, and a map. Certain video excerpts may be accompanied by audio.

**C.    Discovery**

The United States has complied with its discovery obligations under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act (18 U.S.C. § 3500), and all other applicable authorities. All known discoverable material, including exculpatory and impeachment information, has been disclosed. The government will continue to supplement as required.

**D.    Pretrial Motions**

Neither party has filed pretrial motions in this matter.

4

**E.    Motions In Limine**

The government has filed three motions in Limine:

    1) Motion in Limine to Exclude Improper Jury Nullification Arguments (Dkt. 40);

    2) Motion in Limine to Preclude Post-Assault Evidence (Dkt. 41); and

    3) Motion in Limine to Exclude Andrea Velez's Complaint and Subsequent Dismissal of Complaint (Dkt. 42); and

    4) Motion in Limine to Preclude Defendant from Raising a Self-Defense Claim (Dkt. 43).

Defendant filed oppositions to each. (Dkts. 46, 48, 47, and 50, respectively.) The Court granted the government's motions to exclude jury nullification arguments, preclude post-arrest evidence, and exclude Velez's complaint and subsequent dismissal of complaint. (Dkt. 61 at 1-2.) The Court denied the government's motion in limine to preclude a self-defense claim, finding that the defense was only required to make a "slight" showing to satisfy the prima facie requirement. (Id. at 3-4.)

Defendant filed a single Motion in Limine seeking to Exclude Evidence of Prior Alleged Bad Acts and Phone Data. (Dkt. 44.) The government opposed. (Dkt. 45.) The Court granted the motion as to Defendant's digital devices and prior marijuana use; however it reserved ruling regarding Defendant's statements during a January 2023 arrest. (Dkt. 61 at 4.)

**IV.    CHARGED STATUES AND ELEMENTS**

Defendant is charged in the single-count Indictment with Assault on a Federal Officer, in violation of 18 U.S.C. § 111(b). That

5

statute makes it crime when someone "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [officers and employees of the United States] while engaged in or on account of the performance of official duties." The statute provides for an enhanced penalty where in the commission of the assault, a person inflicts bodily injury upon the officer. 18 U.S.C. §§ 111(a), (b).

## A.    Elements of the Offense[4]

The elements of the offense are: (1) Defendant forcibly assaulted C.C.; (2) Defendant did so while C.C. was engaged in, or on account of, his official duties; and 93) Defendant inflicted bodily injury.

"Bodily injury" means "any injury to the body no matter how temporary."

An officer is engaged in the performance of "official duties" when he or she is "acting within the scope of what he or she is employed to do."

If defense makes a prima facie showing of a claim of self-defense against excessive force, the Government must prove that Defendant did not act in reasonable self-defense.

## B.    Mens Rea

Section 111 is a general intent crime in the Ninth Circuit, and no specific intent to injure is required to prove this offense. United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990) (citing United States v. Jim, 865 F.2d 211 (9th Cir. 1989).

---

[4] Ninth Circuit Model Criminal Jury Instructions, No. 8.2 (2022 ed.) (Assault on a Federal Officer or Employee) (18 U.S.C. § 111(b))

6

**V.   PENALTIES**

A violation of Title 18, Sections 111(b), (b) the U.S. Code is punishable by a maximum of twenty years of imprisonment to be followed by up to a 3-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100.

**VI.   LEGAL AND EVIDENTIARY ISSUES**

The Government will not exhaustively recite every legal issue in this case below but seeks to identify the issues below in order to foster efficiency and transparency of legal issues during this trial.

**A.   Video Evidence**

Body-worn camera footage, bystander video, and surveillance videos are admissible upon authentication under Federal Rule of Evidence Rule 901 through the testimony of a witness with knowledge. The recordings will fairly and accurately depict the events at issue in this case, including Defendant's conduct, officers' repeated commands, and the assault itself. The probative value of this evidence is substantial and not outweighed by any risk of unfair prejudice under Rule 403.

**B.   Statements by Defendant**

Defendant's statements during the incident—including his profane and verbal confrontations, his admission that he was "blocking" the officers, and his continued refusals to comply—are admissible as statements of a party opponent under Rule 801(d)(2)(A). These statements are not hearsay and are probative of Defendant's motive, knowledge, and willfulness in forcibly impeding the officers engaged in official duties prior during the assaultive course of conduct.

Similarly, officers' commands directing Defendant to step back, as well as warnings regarding the impending use of pepper spray, are admissible not for the truth of the matters asserted but to show their effect on the listener—namely that Defendant was aware of lawful commands and chose to disregard them. These statements provide necessary context for the encounter and are directly relevant to whether Defendant acted willfully and forcibly under 18 U.S.C. § 111.

### C.    Recordings Must be Played in Open Court

All duly admitted recorded conversations must be played in open court. Allowing jurors to take into the jury deliberation room recorded conversations that were not played in open court is structural error requiring automatic reversal if a defendant objects to allowing the jurors to have the unplayed calls in the jury room. United States v. Noushfar, 78 F.3d 1442, 1444-46 (9th Cir. 1996), as amended, 140 F.3d 1244 (9th. Cir. 1998). Accordingly, if the jury wishes to hear playback of a recording during deliberations, then such playback must occur in open court with all parties present and the entire requested recording must be played back.

### D.    Lay Testimony (Evidence of Bodily Injury)

Lay testimony that C.C. sustained a facial contusion as a result of Defendant's punch is sufficient to establish bodily injury under § 111(b). Such evidence is admissible through lay testimony and corroborating evidence, including photographs under Rule 701. No expert testimony is required for these straightforward injuries.

### E.    Photographs

The United States intends to introduce photographs of individuals relevant to the case. Photographs are generally

admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977). Photographs should be admitted so long as they fairly and accurately represent the event or object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

### F.    Duplicates

"A duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

### G.    Cross-Examination of Defendant

The Government is unaware whether Defendant intends to testify at trial. If Defendant does testify, the Government should be permitted fully to cross-examine him because a defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. See Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination."). A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The scope of a

9

defendant's waiver is co-extensive with the scope of relevant cross-examination. United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992).

### H.   Agent at Counsel Table

Under Rule 615, investigative agents are permitted to sit at counsel table throughout the trial even though the "agent is or may be a witness" because his or her "presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter." Rule 615, Notes of Committee on the Judiciary, Senate Rpt. No. 93-1277.

### I.   Jury Consideration of Potential Sentence

It is an "established axiom that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." Shannon v. United States, 512 U.S. 573, 578 (1994) (internal quotations omitted). The jury's duty is to determine their verdicts based solely on the evidence and the law as instructed by the Court; sentencing is the exclusive province of the Court. References by Defendants to potential punishments—including the applicable mandatory minimum—would serve no legitimate purpose and would only invite jury nullification. Such commentary risks unfair prejudice, confusion of the issues, and a verdict based on sympathy, rather than law. Ultimately, lawyers "should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict." United States v. Young, 470 U.S. 1, 9, no. 7 (1985) (citing ABA Standard for Criminal Justice 4-7.8).

### J.    Objections in the Presence of the Jury

For the same reasons as above, parties should refrain from making misconduct or discovery related objections in front of the jury. Such tactics serve no evidentiary purpose and improperly suggest to the jury that the Government has withheld information or otherwise acted in bad faith. These insinuations are highly prejudicial, risk confusing the jury, and encroach on matters reserved to the Court. Any discovery disputes or claims of misconduct should be raised outside of the presence of the jury to ensure a fair, orderly, and efficient trial.

### K.    Affirmative Defense

Defendant has indicated an intent to pursue a self-defense theory. Self-defense in a prosecution under 18 U.S.C. § 111 requires evidence from which a reasonable jury could find that Defendant reasonably believed he faced an immediate use of excessive force by the officer threatening serious bodily harm, and that he used no more force than necessary in response. Comment to Ninth Circuit Model Crim Jury Instr. 8.3; United States v. Urena, 659 F.3d 903, 907 (9th Cir. 2011). There is no right to resist an unlawful arrest alone. United States v. Span, 970 F.2d 573, 579-80 (9th Cir. 1992).

## VII. CONCLUSION

The Government respectfully requests leave to file such supplemental memoranda as may become necessary during trial preparation and trial and as directed by the Court.

11